UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 2: 11-52-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MEREDITH L. LAWRENCE, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The United States has filed a motion *in limine* seeking exclusion of expert testimony that Defendant Meredith Lawrence intends to present at trial. [Record No. 31] According to the government, the proposed expert testimony should be excluded because it is not reliable. For the reasons explained below, the motion will be granted, in part, and denied, in part.

## I.

Defendant Lawrence is charged with three counts of filing a false tax return in violation of 26 U.S.C. § 7206(1). [Record No. 1] The Indictment alleges that he under-reported his income in 2005, 2006, and 2007. [*See id.*, pp. 1-3] The parties have identified five categories of income that the defendant allegedly failed to report: "(1) funds from Lawrence's IOLTA account, (2) reimbursed expenses from attorneys who rented office space from Lawrence, (3) rental income from those same attorneys, (4) rental income from residential tenants, and (5) cash from Racer's gentlemen's club." [Record No. 33, pp. 2-3; *see* Record No. 31, p. 2] Lawrence

-1-

seeks to offer opinion testimony from a certified public accountant ("CPA"), Gary Stephens,

regarding each of these categories.

## II.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony.

It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify in the form of an opinion or otherwise if:
>
> (a)    the expert's scientific, technical, or other specialized knowledge
>        will help the trier of fact to understand the evidence or to
>        determine a fact in issue;
> (b)    the testimony is based on sufficient facts or data;
> (c)    the testimony is the product of reliable principles and methods; and
> (d)    the expert has reliably applied the principles and methods to the
>        facts of the case.

Fed. R. Evid. 702.

The Sixth Circuit has explained that Rule 702 comprises three requirements:

qualification, relevance, and reliability. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517,

528-29 (6th Cir. 2008) (citing Fed. R. Evid. 702).  In assessing the reliability of proposed expert

testimony, the Court looks to Rule 702's subsections, asking "whether the testimony is based

upon 'sufficient facts or data,' whether the testimony is the 'product of reliable principles and

methods,' and whether the expert 'has applied the principles and methods reliably to the facts

of the case.'" *Id.* (quoting Fed. R. Evid. 702).  The proponent of expert testimony must establish

its admissibility by a preponderance of the evidence. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d

244, 251 (6th Cir. 2001).  The Federal Rules of Evidence contain another important limitation

in criminal cases.  An expert witness must not "state an opinion about whether the defendant did

or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704(b).

The United States does not assert that Stephens is not qualified to provide opinion testimony. [*See* Record No. 31] Likewise, it does not challenge the relevance of the proposed testimony. [*See id.*; Record No. 33, p. 10] Instead, the primary attack relates to whether Stephens will offer reliable testimony in the areas outlined in his report. *See In re Scrap Metal*, 527 F.3d at 529.[1] According to the government, Stephens' opinions are unreliable because "the sole basis of [his] knowledge about how [Lawrence's accounting] records were made or maintained is information he has received from the Defendant." [Record No. 31, p. 4] It points out that "Stephens has not interviewed the Defendant's CPA or bookkeepers, or otherwise attempted to verify his understanding of the Defendant's accounting process." [*Id.*] Thus, it argues, Stephens "[i]n essence . . . intends to serve as 'a conduit for the admission of inadmissible hearsay.'" [*Id.* (quoting *United States v. Tipton*, 269 F. App'x 551, 560 (6th Cir. 2008) (other internal quotation marks omitted))]

In response, Lawrence has provided copies of five reports prepared by Stephens — one for each alleged category of unreported income — and a copy of his *curriculum vitae*. [Record Nos. 33-1, 33-2] The reports demonstrate that Stephens reviewed a number of sources in reaching his opinions, including the analysis of Special Agent Moening and the list of evidence

---

[1] Unfortunately, the United States has not addressed in any detail the *specific* testimony to be offered. As a result, the defendant did not respond to the specific areas outlined in the eleven-page report which is attached to the defendant's pleading filed June 8, 2012 [Record No. 33] To further complicate the Court's analysis, the United States has not filed a reply to the defendant's response brief.

she used in preparing that analysis; accounting records for Lawrence's various businesses; Lawrence's tax returns; the files of Lawrence's accountant; Lawrence's bank records; and "documents and computer files relating to rental income." [Record No. 33-1, p. 9; *see id.*, pp. 1-11] While the reports do not cite Stephens' source for background information about Lawrence's accounting practices, most of the opinions stated in the reports appear to be based on sufficient facts.

For example, the report pertaining to reimbursed attorney expenses indicates that Stephens "reviewed the files of Mr. Lawrence's CPA" and found that the CPA "had a copy in his office file of the PSC QuickBooks General Ledger for years 2003 through 2006." [*Id.*, p. 4] Based on his review of the QuickBooks accounting records and the presence of those records in the CPA's file, Stephens opined that the CPA had access to "all financial records needed . . . to include all taxable income in Mr. Lawrence's tax returns." [*Id.*, p. 5] Likewise, Stephens concluded from his "review of a workpaper included in the CPA's workpapers" that Lawrence's CPA was aware of the attorney rental income and thus should have reported it on Lawrence's tax returns. [*Id.*, p. 8] In addition, Stephens formed certain opinions regarding the accuracy of S.A. Moening's report based on his review of her analysis and Lawrence's accounting and bank records. [*See id.*, pp. 4-5]

Only the fourth report is unclear as to the basis for Stephens' opinions. In that report, Stephens opined that the CPA had access to certain spreadsheets prepared by Lawrence's bookkeeper containing information about rental receipts because the CPA "was permitted to sit at the bookkeeper's desk and access her computer and examine whatever computer files and

documents he wanted to examine" when preparing Lawrence's tax returns.  [*See id.*, pp. 9-10]
Therefore, Stephens concluded, any failure to report income in tax years 2005 and 2006 is
attributable to the CPA, not to Lawrence.  [*Id.*, p. 10]  He further opined, based upon his
specialized knowledge and his "understanding" of the accounting methods employed by
Lawrence and Lawrence's staff with respect to rental income, that those "procedures and
practices . . . are consistent with those of a taxpayer who intends to accurately report rental
income on his tax returns."  [*Id.*]  However, Stephens does not indicate the source of his
knowledge regarding Lawrence's accounting practices and the CPA's access to the spreadsheets.
[*See id.* at 9-10]  To the extent his "understanding" of those facts is derived solely from
statements of Lawrence himself, it is not a reliable basis for expert testimony.  *See Tipton*, 269
F. App'x at 560.

On the whole, however, Lawrence has demonstrated that the proposed expert testimony
is not "based solely on the [d]efendant's self-serving statements," as the United States asserts.
[Record No. 31, p. 5]  Rather, the expert report reflects that most of Stephens' opinions are
founded on "sufficient facts or data."  Fed. R. Evid. 702.  An *in limine* ruling to completely
preclude Stephens from testifying as an opinion witness is not warranted.  However, at the
present time, it does not appear that Stephens is qualified to express the following opinions that
the Court has highlighted below in bold print:

- [Record No. 33-1; Exhibit 1, pg. 3 of 11, lines 4-7 and 13-14 regarding "Analysis
of IOLTA"] "**it is reasonable for a lawyer to expect that his CPA, when
preparing the tax returns, will review all records of the lawyer needed to**

prepare and file accurate returns, including the IOLTA accounting records." . . . "The error in not including those checks was that of the CPA for Mr. Lawrence, **not Mr. Lawrence himself.**"

- [Record No. 33-1; Exhibit 1, pg. 5 of 11, lines 31-36, regarding "Analysis of Reimbursed Attorney Expenses"] **"Mr. Stephens is familiar with the relationships and scope of authority established between business owners and their bookkeepers and CPAs, and the extent of authority customarily granted to bookkeepers and CPAs of those business owners who want their tax returns to accurately reflect all taxable income.  The entry made on December 30, 2005 is consistent with an entry made by a bookkeeper/CPA that was granted authority by a taxpayer to make all entries necessary to enable the filing of a tax return that includes all reportable taxable income."**

- [Record No. 33-1; Exhibit 1, pg. 10 of 11, line 7, regarding "Analysis of Rental Receipts"] "[I]t is Mr. Stephens' opinion that any error in not including accurate rental income on the 2005 and 2006 tax returns was a result of lack of inquiry and the exercise of due diligence by the CPA for Mr. Lawrence, **and not Mr. Lawrence himself.**"

- [Record No. 33-1; Exhibit 1, pg. 10 of 11, line 9 and 12, regarding "Analysis of Rental Receipts"] "Mr. Stephens is familiar with the practices, procedures and protocols of taxpayers who **intend to** file **honest and** accurate tax returns." . . . "**Honest** taxpayers generally give receipts to people who pay them in cash."

-6-

- [Record No. 33-1; Exhibit 1, pg. 10 of 11, lines 24-26, regarding "Analysis of Rental Receipts"] "**It is Mr. Stephens' opinion that the procedures and practices of Mr. Lawrence and his staff for accepting and recording tenant rent are consistent with those of a taxpayer who intends to accurately report rental income on his tax returns.**"

- [Record No. 33-1; Exhibit 1, pg. 10 of 11, line 44, regarding "Analysis of Rental Receipts"] "Any error in not including such accurate information was that of the CPA **and not Mr. Lawrence.**"

- [Record No. 33-1; Exhibit 1, pg. 11 of 11, lines 30-31, regarding "Analysis of Cash From Racers"] "It is not uncommon for individuals who are owners of multiple businesses to advance money to a related business. **Those individuals often neglect to make entries in their business records of each business to properly reflect either the advances or the repayment of them.**"

At this point in the proceedings, it does not appear that a certified public accountant – even with the extensive experience possessed by Mr. Stephens – would be able to testify to the matters outlined above.  Such opinions do not appear to be based on objective facts and/or data capable of scrutiny, analysis and proper examination.  Likewise, they do not appear to be the product of "reliable principles and methods" utilized by professionals in the accounting field.  Instead, in seeking to offer these opinions, it would seem that Mr. Stevens is, in reality, seeking to express stealth opinions regarding ultimate issues of the defendant's intent and the willfulness of his conduct.  And while the defendant has not demonstrated at this point that such opinions

would be reliable under the authorities outlined above, they would also be barred by Rule 704(b) of the Federal Rules of Evidence.

## III.

For the reasons discussed herein, it is

**ORDERED** that the United States' Motion in Limine [Record No. 31] is **GRANTED**, in part, and **DENIED**, in part.

This 14th day of June, 2012.

Signed By:

_Danny C. Reeves_   DCR

**United States District Judge**